The Honorable Al Lindley
State Representative, District 93
State Capitol, Room 328A
Oklahoma City, Oklahoma 73105
Dear Representative Lindley:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1 Does the Reentry Policy Council created by 2007 Okla. Sess. Laws ch. 274, § 2, preempt the statutory authority of the State Board of Corrections to establish policies for the operation of the Department of Corrections?
 2. Does the Transformational Justice Interagency Task Force created by 2007 Okla. Sess. Laws ch. 274, § 3, preempt the statutory authority of the State Board of Corrections to establish policies for the operation of the Department of Corrections?
In 2007, the Oklahoma Legislature enacted a new section of law to be known as the Transformational Justice Act. 2007 Okla. Sess. Laws ch. 274, § 1.[1] This legislation created two new entities with responsibilities relating to the reentry of prison inmates into society: the Reentry Policy Council and the Transformational Justice Interagency Task Force. 2007 Okla. Sess. Laws ch. 274, §§ 2(A), 3(A) (codified at 57 O.S. Supp.2007, §§ 521.1(A), 521.2(A)). Both entities have been given responsibilities relating to reentry of Oklahoma prisoners into society after release from incarceration. Your questions concern the relationship between these entities and the State Board of Corrections, which has been given authority pursuant to 57 O.S. 2001, § 504[57-504](b)(1) to "establish policies for the operation of the Department [of Corrections.]" You ask whether the new entities preempt the statutory authority of the State Board of Corrections to establish policies for the Department of Corrections regarding the reentry of inmates into society. By the use of the term "preempt," you seek a determination of whether the recent statutes take the place of or have precedence over those providing that the State Board of Corrections establishes policy for the operation of the Department of Corrections.
We begin by noting that the State Board of Corrections ("Board") is not a constitutionally created board, but a creation of statute. The Oklahoma Legislature created the Board to be the governing board of the Department of Corrections ("Department"). 57 O.S. Supp.2007, § 503. The Legislature is restricted from limiting the powers ofconstitutional boards. Bd. of Regents v. Baker, 638 P.2d 464, 466 (Okla. 1981). As the power vested in the Board is purely statutory, there is no restriction or limitation on the Legislature's power. Accordingly, the Legislature possesses the power, should it choose to do so, to limit the power of the Board or to grant policymaking authority to other entities in addition to the Board. As will be discussed below, the Legislature has not done so in this instance.
 I. THE POWERS AND DUTIES OF THE STATE BOARD OF CORRECTIONS
The Legislature instituted procedures for appointing the membership of the Board and established qualifications for the members. 57 O.S. Supp.2007, § 503. In Section 504 of Title 57, the Legislature describes the powers and duties of the Board to include the establishment of "policies for the operation of the Department[.]" 57 O.S. 2001, § 504[57-504](b)(1). The Board is also empowered to "appoint and fix the salary of the Director[.]" Id. § 504(b)(6).
The Legislature has prescribed general powers and duties for the Director of the Department. The Director is to "supervise the activities of the Department and, subject to the policies established by the Board, to act for the Department in all matters, except as may be otherwise provided in [the Corrections Act of 1967]." 57 O.S. 2001, § 507[57-507](a). The Director may also "prescribe rules and regulations for the operation of the Department, consistent with the general policies established by the Board[.]" Id. § 507(b). Specifically with regard to reintegration of prisoners into society, the Director is required:
 To provide reintegration referral services to any person discharged from the state custody who has volunteered to receive reintegration referral services. The Director may assign staff to refer persons discharged from state custody to services. The Director shall promulgate rules for the referral process. All reintegration referral services shall be subject to the availability of funds[.]
57 O.S. Supp.2007, § 510(A)(19).
The Legislature has recognized the importance of reintegration into society and has articulated its intent by stating:
 [T]hat inmates in the custody of the Department of Corrections, prior to leaving the custody of the Department, be reintegrated into society through the use of work release programs, work centers, community corrections centers, intermediate sanctions facilities, accredited halfway houses and transitional living centers, subject to the availability of space and funding.
57 O.S. Supp.2007, § 521(B). This statute provides that certain nonviolent offenders "shall be processed for assignment to a work release program, a work center, a community corrections center, an intermediate sanctions facility, an accredited halfway house, a transitional living facility, or any combinations of such placements."Id. § 521(C). "This assignment shall be for the purpose of assisting the person in obtaining gainful employment, receiving reintegration skills, and locating a suitable post-release residence." Id.
In 2004, the Legislature enacted a specific statute regarding the Department's role in reentry programs. See 2004 Okla. Sess. laws ch. 553, § 1 (current version at 57 O.S. Supp.2007, § 115). That statute provides that a reentry program is to be created within the Department by January 1, 2005, "for offenders who need structured release prior to the completion of the sentence." Id. § 115(A). The program does not receive State appropriations and is to be fully funded by federal or private funds. Id.
The program is designed to work with outside providers and the Department has discretion in implementing the program. The Department may choose to begin the program in "a county or counties selected by the Department and may expand or change to other locations . . . at the discretion of the Department." Id. § 115(B). The program is to provide "a continuum of services to meet the needs of offenders assigned or required to complete the program." Id. The statute provides guidelines for the designation of facilities, consideration of offenders and consequences for noncompliance with the program. Id. § 115(C)(D), (G).
With regard to service providers, Section 115 provides at subsections E and F:
 E. All services available in the reentry program shall be selected after open bid and the Department shall actively solicit faith-based and secular providers in all service provider categories. Offenders assigned to the reentry program shall choose a provider of services for each service category.
 F. All service providers contracting for the reentry program shall be required to meet outcome-based standards and evaluations and are required to measure recidivism for all offenders placed for services with that provider according to the rules of the Department.
Id. The Legislature specifically provided that the Department "shall establish rules and procedures to implement the provision of this act."Id. § 115(J).
A number of policies adopted by the Department relate to reentry and reintegration into society. The primary one, Operating Procedures andPolicies for the Oklahoma Board of Corrections OP-060901, titledPre-Release Planning and Re-Entry Process, is introduced with the following language:
 The Department of Corrections, in partnership with appropriate agencies, will maintain an infrastructure of offender reentry including assessment, needs identification, case planning, training, treatment and pre-release planning. The goal of re-entry is the reduction of offender recidivism. This goal will be achieved through underscoring the philosophy that re-entry begins at reception and continues throughout incarceration and the offender's transition back into the community.
Id., available at http://www.doc.state.ok.us/Offtech/op060901.pdf, at 1. The departmental policy focuses on preparing the inmate for reentry into society. "This process begins at a minimum of 180 days prior to projected release and involves a shift from case plan objectives to individual community preparedness." OP-060901(I)(B), at 2.
This policy implemented by the Department recognizes the need for services to be provided from outside the Department to assist in the transition. The policy defines wrap-around services as "services provided to offenders transitioning to the community with the aid of a team of support individuals which may include family, clergy, social service agencies, probation and parole officers, etc." OP-060901(I)(D). "A system of multi-agency networks will be maintained to serve the transition and aftercare needs of offenders." Id. A transition team, to be composed "of no more than 50% professional providers and the remaining [to be] family, friends and others," is to be developed for and by the offender to assist in the transition back into the community. OP-060901(I)(F).
In Section IV, Pre-Release Planning, the departmental policy states the goal is to provide "appropriate referrals to community agencies to assist with services and the development of an individualized strength based pre-release plan." Id. at 4. This section focuses on assisting offenders by contacting professionals in the community and making referrals. "Chaplains and/or volunteer coordinators may coordinate faith-based and community assistance to any releasing offender requesting referrals for housing, employment opportunities or counseling." OP-060901(IV)(D)(2), at 6. That section provides that outside social service agencies will be encouraged to begin working with offenders prior to release, and provides along with OP-030118 ("Visitation") for special visits to facilitate this process. OP-060901(IV)(E).
A number of other policies speak to reentry and reintegration in a more general sense. For example, OP-060104, Community CorrectionsAssessment, in pertinent part provides: "[t]he goal of community corrections is to balance the interests and safety of the community while addressing the inmate's need for reintegration services by providing equitable opportunities and appropriate sanctions for the inmates." Id., available at
http://www.doc.state.ok.us/Offtech/op060104.htm, at 1. The policy titledVolunteer Program, OP-090211, states that the Department "is committed to a partnership between agency employees, citizen volunteers, and student interns in achieving its mission" and recognizes it is essential for these volunteers be involved in corrections "to provide additional resources, learn about the challenges of corrections, and enhance program and reentry efforts of offenders." Id., availableat http://www.doc.state.ok.us/Offtech/op090211.pdf, at 1. A program of leisure time activities has been established by OP-030106 to be "taught or conducted in such a manner that the offenders integrate these pro-social activities into their lifestyle upon reentry into the community." Id., available at
http://www.doc.state.ok.us/Offtech/op030106.pdf, at 1. Work release and continuing education programs are also designed to assist eligible inmates in reintegration. See OP-090110, available at
http://www.doc.state.ok.us/Offtech/op090110.htm, at 1.
The Department is also authorized by policy OP-030402 to place inmates requiring specialized care or treatment, or who have reintegration needs, into inpatient or residential programs in the community. Seeid., available at http://www.doc.state.ok.us/Offtech/op030402.htm. This requires contracts or service agreements between the Department and those community agencies or facilities that meet departmental specifications. See id.
 THE REENTRY POLICY COUNCIL
In 2007, the Oklahoma Legislature created the Reentry Policy Council to be effective November 1, 2007. See 2007 Okla. Sess. Laws ch. 274, §§ 2, 4. The Council was created for the purpose of "providing oversight of the reentry policies and programs operated by the Department of Corrections." 57 O.S. Supp.2007, § 521.1(A). The Council consists of eleven (11) members with certain statutory qualifications: three appointed by the Governor, four by the Speaker of the House of Representatives and four by the President Pro Tempore of the State Senate. Id. The legislation requires the Council to perform the following functions:
 1. Review corrections policies, programs and procedures to ensure that the primary purpose of each is public safety during imprisonment and after release;
 2. Identify gaps in reentry programs and services as well as overlapping efforts, and recommend changes to address those issues;
 3. Review policies to ensure that corrections facilities recruit and welcome volunteers;
 4. Review the licensing procedures within this state to eliminate barriers to employment that are unrelated to the conduct underlying the conviction; and
 5. Report annually to the Legislature and the Governor on the progress of the reentry initiative, including the impact on recidivism, effectiveness of agency coordination and communications, and the implementation of reentry plans and use of funding.
Id. § 521.1(B).
The Legislature has established a fund which "shall consist of monies received from appropriated funds to be used for grants to volunteer organizations including, but not limited to, faith-based organizations which provide health, educational or vocational training and programs that assist the reintegration efforts of the Reentry Policy Council."Id. § 521.2(D). Monies in the fund are to be budgeted and expended by the Office of Faith-Based Incentives. Id. The Council does not have authority to administer funds.
You ask whether creation of the Council preempts the statutory authority of the State Board of Corrections to set policy on reentry of inmates into society. A review of the duties of the Council shows that the Council has not been given any policymaking power. See id. § 521.1(B). The words used to describe the duties of the Council are the verbs "review," "identify" and "report." See id. These words do not describe any type of action which would encroach upon the duties of the Board as policymaker for the Department or indicate that the Council has any authority over the Board or the operations of the Department. Rather, the Council is in the nature of an advisory entity, which makes recommendations to the Legislature and the Governor. See id. § 521.1(B). Although the Legislature uses the term "oversight" in referring to the purpose for the creation of the Council, 57 O.S. Supp.2007, § 521.1(A), the duties of the Council established by the Legislature do not involve any type of supervision as would normally be associated with the term "oversight." Id. § 521.2(B).
As the functions of the Council and the Board of Corrections do not conflict and as the Council does not have policymaking authority, we find that the Reentry Council does not preempt the statutory authority of the Board of the Department of Corrections to establish policy for the operation of the Department.
 THE TRANSFORMATIONAL JUSTICE INTERAGENCY TASK FORCE
In the same bill that created the Council, the Legislature created, until July 1, 2010, the Transformational Justice Interagency Task Force.See 57 O.S. Supp.2007, § 521.2(A). The Legislature provided for the membership of the Task Force to include specific designated state officials and provided for the appointment of a chair, the convening of meetings and reimbursement for travel expenses. See id.
The Legislature required the Task Force to perform the following duties related to reentry and recidivism:
 1. Establish goals for reducing the rate of recidivism among inmates;
 2. Coordinate the reentry programs of the state to help inmates find jobs, housing, substance abuse treatment, medical care, and mental health services;
 3. Ensure that those who supervise offenders in prison are linked to those that will supervise them after release;
 4. Identify methods to improve collaboration and coordination of reentry programs and services, including cross-training, management information systems that are accessible to partner agencies, screening procedures to assess and refer efficiently across federal, state and local boundaries, and policies and procedures that measure offender reentry management with well-defined performance-based outcomes;
 5. Seek partnerships with faith-based and community groups to provide programs and services;
 6. Identify effective evidence-based practices in reentry support, treatment and intervention programs;
 7. Encourage expansion of family-based treatment centers that offer family-based comprehensive treatment services for parents and their children as a complete family unit;
 8. Develop and establish a parenting skills program to be implemented by the Department of Corrections for inmates who are within one (1) year of being released from incarceration. The parenting skills program shall provide education and training to develop and enhance inmate parenting skills with an emphasis on providing techniques to teach the inmate how to raise a healthier child who will be less at risk of engaging in future criminal activities;
 9. Establish collaboration among corrections and community corrections, technical schools, community colleges, and the workforce development and employment service sectors to:
 a. promote, where appropriate, the employment of people released from prison and jail, through federal efforts such as educating employers about existing financial incentives and facilitate the creation of job opportunities, including transitional jobs, for this population that will benefit communities,
 b. connect inmates to employment, including supportive employment and employment services, before their release to the community, and
 c. address barriers to employment;
 10. Include victims in the reentry process and facilitate victim-offender dialogue when the victim is willing; and
 11. Communicate regularly with local agencies and faith-based and community groups.
Id. § 521.2(C).
You question whether the creation of the Task Force preempts the statutory duties of the State Board of Corrections to set policy for the operation of the Department.
To address your question, it is necessary to understand the function of the Task Force created by the Legislature. The Task Force was created for a limited period of time, until July 1, 2010. Id. § 521.2(A). The Task Force is made up of officials from existing state agencies, including the Director of the Department of Corrections. Id. § 521.2(A)(1). The Task Force is not created with authority to make rules or formulate orders as it would be, were it a state agency. See 74 O.S. 2001, § 3301[74-3301] (identifying characteristics of a state agency).
In interpreting a statute, the intent of the Legislature is ascertained by considering the language of the statute as a whole "in light of its general purpose and objective." Dean v. Multiple InjuryTrust Fund, 145 P.3d 1097, 1101 (Okla. 2006). The legislative intent in establishing the Task Force was to provide assistance to the Department in combating recidivism through reentry programs. See 57 O.S. Supp.2007, § 521.2(C). The duties of the Task Force, while more expansive than those of the Council, do not include policymaking for the operation of the Department. See id.
The duties given to the Task Force reflect the Legislature's intent that the Task Force assist the Department by performing functions in addition to those performed by the Department relating to reentry and reintegration. See id. Those duties include functions such as "coordinating," "communicating" and "encouraging." Id. In one specific instance, the Legislature requires the Task Force to "[d]evelop and establish a parenting skills program to be implemented by the Departmentof Corrections for inmates who are within one (1) year of being released from incarceration." Id. § 521.2(C)(8)) (emphasis added). This language shows that the Task Force is to work with the Department in reintegrating prisoners into society, but the Task Force itself does not have the independent authority to implement programs. This spirit of cooperation is further reinforced by the statutes requiring the Department to contract with service providers to provide reentry services. It is also shown by the departmental policies discussed above, which emphasize the use of social service agencies to assist the Department in the reentry process.
Furthermore, like the Council, the Task Force does not have authority to administer funds. See 57 O.S. Supp.2007, § 521.2. The Task Force is composed of state officials whose travel expenses related to their service on the Task Force are to be reimbursed by their respective agencies. Id. § 521.2(B). The 2007 legislation refers to two separate revolving funds. One fund, which consists of monies received from appropriated funds to be used for grants to volunteer organizations to provide training and programs that assist the reintegration efforts of the Reentry Policy Council, is to be expended by the Office of Faith-Based Initiatives. Id. § 521.2(D). The other fund is a revolving fund for the Department of Corrections to be designated the "Transformational Justice Revolving Fund." Id. § 521.2(E). That fund is to be used for bonuses "to corrections officials who demonstrate improvement in recidivism rates of inmates that were previously under the custody of the Department." Id. These appropriated monies may be budgeted and expended by the Department. Id.
The Board establishes policies for the operation of the Department of Corrections. See http://www.doc.state.ok.us/offtech/policies.htm. The Task Force, created by the Legislature for a finite time period, does not interfere with this statutory duty as the Task Force has no authority to establish policy for the Department or to otherwise bind the Department. See 57 O.S. Supp.2007, § 521.2(C). The Task Force supports the Department by providing services, many outside the internal functions of the Department, which assist the Department in reintegrating offenders into society. See 57 O.S. Supp.2007, § 521.2(D), (E).
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. Title 57 O.S. 2001, § 507[57-507](b) authorizes the Director of the Department of Corrections to prescribe rules and regulations for the operation of the Department of Corrections, consistent with the general policies established by the State Board of Corrections. The Board is charged with the establishment of policies for the operation of the Department. 57 O.S. 2001, § 504[57-504](b)(1).
 2. The Legislature, through 57 O.S. Supp.2007, § 115, has authorized a reentry program to be created with the Department of Corrections for offenders who need structured release prior to completion of their sentences. This program requires the Department of Corrections to "actively solicit faith-based and secular providers in all service provider categories." Id. § 115(E). "All service providers contracting for the reentry program shall be required to meet outcome-based standards and evaluations and are required to measure recidivism for all offenders placed for services with that provider according to the rules of the Department." Id. § 115(F).
 3. The Reentry Council created by 2007 Okla. Sess. Laws ch. 274, § 2 (codified at 57 O.S. Supp.2007, § 521.1) is charged with reviewing policies and procedures, identifying gaps in reentry programs and services and recommending changes, and reporting to the Legislature and the Governor. Id § 521.1(B). These duties do not include policymaking for the Department and are consistent with the duties of the Board of Corrections to establish policies for the operation of the Department of Corrections.
 4. The Transformational Justice Task Force created by 2007 Okla. Sess. Laws ch. 274, § 3 (codified at 57 O.S. Supp.2007, § 521.2), is given the authority to perform such functions as establishing goals, coordinating reentry programs, identifying methods to improve collaboration and coordination of reentry programs and services, seeking partnerships with faith-based and community groups and communicating with local agencies and faith-based groups. Id. § 521.2(E). These duties support those of the Department and do not conflict with the duties of the Board of Corrections to establish policies for the operation of the Department of Corrections.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
SANDRA D. RINEHART SENIOR ASSISTANT ATTORNEY GENERAL
[1] Section 1 (which names the Act) is not codified. 2007 Okla. Sess. Laws ch. 274, § 1. All other provisions of the Act are codified. Seeid. §§ 2, 3.